UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 06-312-GWU


REGINA SMITH,                                                          PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


**INTRODUCTION**

The plaintiff brought this action  to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

1

Smith

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Smith

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

3

Smith

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Smith

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

Smith

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

Smith

physical and mental impairments.  <u>Varley  v. Secretary of Health and Human</u>
<u>Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Regina Smith, was found by an Administrative Law Judge (ALJ)
to have a "severe" impairment due to chronic obstructive pulmonary disease.  (Tr.
15).  Nevertheless, based in part on the testimony of a vocational expert (VE), the
ALJ determined that the plaintiff retained the residual functional capacity to perform
a significant number of jobs existing in the economy and, therefore, was not entitled
to benefits.  (Tr. 15-19).  The Appeals Council declined to review, and this action
followed.

At the administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age, education, and work experience could perform any jobs if she
were capable of "light" level exertion, could have no exposure to dust, fumes, smoke,
noxious gases or chemicals, and had to avoid extremes of heat or cold.  (Tr. 166-7).
The VE responded that there were jobs such a person could perform, such as a
receptionist and a cashier/clerk, and proceeded to give the numbers in which they
existed in the state and national economies.  (Tr. 167).

On appeal, this Court must determine whether the administrative decision is
supported by substantial evidence.

The plaintiff testified that she was unable to work because of acute asthma,
bronchitis, and emphysema, which had been diagnosed in February, 2004.  (Tr. 160,

7

Smith

162).  She became short of breath after walking only a block, and sometimes just by getting dressed.  (Tr. 160-1).  The only other problem she described was depression due to her inability to  engage in any activities, but she also stated that there had been no treatment for this condition and she did not have a treating physician.  (Tr. 163-4).

Records from Marion General Hospital in Indiana show that the plaintiff was diagnosed with moderate chronic obstructive pulmonary disease, "predominantly chronic asthma and bronchitis," in February, 2004.  (Tr. 114).  A pulmonary function test showed an FEV1 of 1.34 liters before bronchodilation, and 1.52 liters post-bronchodilation.  (Tr. 115).  The physician noted that there was a "significant bronchodilator response".  (Tr. 114).  It was also noted that lung volumes indicated "severe air trapping" but diffusing capacity was only mildly reduced and pulse oximetry with activity was normal.  (Id.).  A chest x-ray showed no acute focal pulmonary disease.  (Tr. 118).  Medications were prescribed, but no specific functional restrictions were given.  (E.g. Tr. 122-3).

Dr. Joseph Koenigsmark conducted a consultative examination of the plaintiff in February, 2005.  His physical examination was largely normal, although the physician noted that breath sounds were very difficult to hear and there were some wheezes in the lower lung fields (Tr. 126).  The plaintiff became short of breath during the range of motion examination.  (Tr. 125-6).  A pulmonary function test showed an FEV1 of 1.19 liters before bronchodilation and 1.40 liters post-

8

Smith

bronchodilation. (Tr. 130). Dr. Koenigsmark indicated that this result was equivalent to a "severe expiratory obstruction," and concluded that the plaintiff's ability to do heavy lifting or moving of objects with exertional activity would be "very limited." (Tr. 127, 130).

State agency physicians who reviewed the evidence found that the plaintiff would be capable of performing "medium" level exertion, with one of the physicians prohibiting concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 136-51).    Clearly, the ALJ's hypothetical question is consistent with the only specific restrictions given by Dr. Koenigsmark and the reviewers.   The plaintiff argues on appeal that pulmonary function testing shows that she meets the requirements of the Commissioner's Listing of Impairment (LOI) 3.02, captioned "Chronic pulmonary insufficiency."  20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005). As previously described, Dr. Koenigsmark's pulmonary function testing showed an FEV1 of 1.19 liters before bronchodilation, and the values given in Table 1 of LOI 3.02 show that an individual of 64-65 inches would meet the Listing with an FEV1 of 1.25 liters or less.  However, the only evidence that the plaintiff is 64 inches tall is contained in the February, 2004 pulmonary function test at Marion General Hospital, at which time the FEV1 was 1.34 liters before bronchodilation.  (Tr. 115). Dr. Koenigsmark measured the plaintiff's height as being 62.25 inches (Tr. 125, 130), and the plaintiff herself stated that she was five feet two inches tall (Tr. 158). An individual 62 or 63 inches tall cannot meet LOI 3.02 unless the FEV1 is 1.15 liters

9

Smith

or less. To the extent that the evidence is conflicting, the finder of fact could reasonably have determined that the plaintiff was 62 inches tall. Moreover, the Introduction to Listing 3.00 establishes that pulmonary function testing "should be repeated after administration of an aerosolized bronchodilator... if the pre-bronchodilator FEV1 value is less than 70 percent of the predicted normal value." LOI 3.00E. Even Dr. Koenigsmark's testing, which showed the most restriction, produced values well above Listing level after bronchodilation.  Therefore, the plaintiff's argument is without merit.

The decision will be affirmed.

This the 14th day of March, 2007.

Signed By:

*G. Wix Unthank*

United States Senior Judge